IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT HENRY FORD, III | : | CIVIL ACTION |
| v. | : | |
| | : | No. 25-7159 |
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR LEGACY MORTGAGE ASSET TRUST 2021-GS4, et al. | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez** **August 3, 2026**

Pro se Plaintiff Robert Henry Ford, III brings an action against Defendants U.S. Bank National Association, as Trustee for Legacy Mortgage Asset Trust 2021-GS4 ("U.S. Bank"), Office of the Sheriff of Delaware County and Sheriff Jerry Sanders, Jr (collectively the "Sheriff Defendants"), B&R Services for Professionals, Inc. and Granville Morris (collectively the "B&R Defendants"), and Stern & Eisenberg, PC, and Matthew Fallings (collectively the "Stern Defendants"). Ford asserts the Defendants conspired to fabricate service in his state foreclosure proceedings. U.S. Bank, the Sheriff Defendants, and the Stern Defendants all move to dismiss the complaint. The B&R Defendants move to set aside the default entered against them. U.S. Bank also moves to enjoin Ford from future filings, deem him a vexatious litigant, and sanction him. Because Ford's claims are either barred by the statute of limitations or fail to state a claim, the Court will dismiss his complaint with prejudice. As a result, the Court will also set aside the B&R Defendants' default. But the Court will not grant U.S. Bank's motion to enjoin Ford from filing.

**BACKGROUND**[1]

"This case arises out of a mortgage foreclosure action that Defendant U.S. Bank brought against pro se Plaintiff Robert Henry Ford III in the Delaware County Court of Common Pleas,

[1] The Court will take judicial notice of the filings in Ford's foreclosure action and previous federal case because it may consider matters of public record, including court dockets, in deciding a motion to dismiss. *El-Hewie v. Bergen Cnty.*, 348 F. App'x 790, 794 (3d Cir. 2009).

Pennsylvania." *Ford v. U.S. Bank Tr. Nat'l Ass'n as Tr. for Legacy Mortg. Asset Tr. 2021-GS4*, No. 25-1678, 2025 WL 2845361, at *1 (E.D. Pa. Oct. 6, 2025). "Ford purchased a home located at 1313 Kerlin Street, Chester, PA 19013 in 1994." *Id.* "In 2008, a new mortgage was recorded on the property." *Id.* "Between February 2017 and January 2023, this mortgage was assigned multiple times and was ultimately transferred to U.S. Bank." *Id.* "According to U.S. Bank, Mr. Ford stopped paying the mortgage in August 2021." *Id.* "On March 22, 2023, U.S. Bank filed a mortgage foreclosure action" against Ford in the Court of Common Pleas of Delaware County. *Id.* U.S. Bank was represented by the Stern Defendants. Dkt. No. 22-4 at 11.

Granville Morris, an employee of B&R Services, swore he personally served a "White Male" at Ford's address at 6 Wales Circle, Bear, DE 19701 on March 28, 2023. Dkt. No. 22-7 at 2. An affidavit attesting to this service was filed on the state court docket on April 13, 2023. Dkt. No. 22-5 at 3. On March 30, 2023, the Delaware County Sheriff swore a deputy served an "Adult family member George Thomas" at the 1313 Kerlin St. address. Dkt. No. 22-6 at 2. An affidavit for this service was filed on the docket on May 31, 2023. Dkt. No. 22-5 at 4.

On April 11, 2023, Ford entered his appearance in the foreclosure action and moved for an extension to respond. Dkt. No. 22-8 & 22-9. On April 28, 2023, Ford filed an answer. Dkt. No. 22-10. On June 1, 2023, Ford filed a response to U.S. Bank's discovery requests. Dkt. No. 23-7. On June 14, 2023, U.S. Bank filed a motion for summary judgment. Dkt. No. 22-11. On June 28, 2023, Ford filed objections and moved to vacate the motion. Dkt. No. 22-12. The state court granted summary judgment to U.S. Bank on August 15, 2023. Dkt. No. 22-13. On September 12, 2023, Ford moved for reconsideration, which the state court denied. Dkt. Nos. 22-14 & 22-15. Ford did not appeal these orders until May 22, 2025. Dkt. No. 22-17. The state courts summarily rejected this appeal as untimely. Dkt. Nos. 22-18 & 22-19. On February 18, 2025, Ford filed a

suit in state court seeking to quiet title to the property, asserting various deficiencies with the foreclosure. Dkt. No. 23-12. That case was removed to the Eastern District of Pennsylvania on March 31, 2025 and dismissed on October 8, 2025. *Ford*, 2025 WL 2845361, at *2. In all his filings, Ford asserted many meritless "sovereign citizen" arguments.[2]

On December 18, 2025, Ford filed a complaint in the instant case. *See* Compl., Dkt. No. 1. He asserts he was never properly served in his foreclosure proceedings because the Defendants had conspired to fabricate affidavits of service to manufacture personal jurisdiction over him and take his property. *Id.* ¶ IV(B). He specifically argues while the affidavits purport to serve a White man and a man named George Thomas, he is a Black man and George Thomas does not exist. *Id.* He now brings a claim alleging a deprivation of his Due Process rights under 42 U.S.C. § 1983 against the Sheriff Defendants and the B&R Defendants (Count I), a Fraud on the Court claim against all Defendants (Count II), and an Abuse of Process claim against the Stern Defendants

[2] "Although 'sovereign citizens' do not share identical beliefs, they generally believe that they are neither subject to federal [and state] law nor federal [and state] courts' jurisdiction." *United States v. Taylor*, 21 F.4th 94, 101 n.6 (3d Cir. 2021). While Ford has not explicitly identified himself as a "sovereign citizen," he has exhibited many signs of subscribing to this ideology. *See* Dkt. No. 23-7 at 2 ("I am not under the authority of any . . . Courts, Attorney Generals, Judges, Magi, Magistrates, . . . etc. I am not governed by Law . . . and so on Last but not least any Statues, Acts, ordinances, or rules of states or men."). *Compare* Compl. ¶ (III)(1), Dkt. No. 1 ("Plaintiff, ROBERT HENRY FORD III, is a Sole Proprietorship registered with the Minnesota Secretary of State . . . , holding the status of a distinct legal entity in commerce."), *and* Dkt. No. 22-10 at 4 (depicting a thumbprint as a signature for Ford), *with Sovereign Citizens Movement*, S. Poverty L. Ctr., https://perma.cc/WR92-TDSX (last visited July 21, 2026) ("Sovereign citizens believe . . . every newborn's rights are split between those held by the flesh-and-blood baby and the ones assigned to his or her corporate shell account—evidenced . . . by the fact that most certificates use all capital letters . . . . They falsely attribute this all-capital version to the actual name of the corporate shell identity, also called a 'straw man,' while [a name] without all caps is the baby's 'real,' flesh-and-blood name. . . . To separate from their corporate shells, sovereign citizens use a series of convoluted steps, such as filing documentation with [a] secretary of state's office . . . [and] signing it with red blood or ink thumbprints . . . ."). The sovereign citizen ideology, in all its forms, is an "indisputably meritless legal theory." *Ewans v. New Jersey*, No. 25-1368, 2025 WL 2630569, at *1 (3d Cir. Sep. 12, 2025) (per curiam) (collecting cases).

(Count III). *Id.* ¶ V. He seeks a declaration that the service in the underlying action was fraudulent and void, injunctive relief preventing the Defendants from selling, transferring, or evicting him from the property, compensatory damages, and punitive damages. *Id.* ¶ VI.

On December 31, 2025, the Sheriff Defendants filed a motion to dismiss. Dkt. No. 6. The B&R Defendants failed to timely respond to Ford's complaint after being served and default was entered against them on February 5, 2026. Dkt. No. 10. On February 9, 2026, the B&R Defendants entered their appearance and moved to set aside the default on February 19, 2026. Dkt. Nos. 11-13. On March 6, 2026, the Stern Defendants filed a motion to dismiss. Dkt. No. 18. On March 25, 2026, U.S. Bank moved to dismiss the case and to deem Ford a vexatious litigant, enjoin him from future filings regarding his foreclosure, and for sanctions. Dkt. Nos. 22 & 23.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) permits two types of jurisdictional challenges: facial attacks and factual attacks. *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 320 (3d Cir. 2018). A facial attack "considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court" whereas a factual attack contests the truth of the jurisdictional allegations. *Id.* (internal citation omitted). In a facial attack, as there is here, a court must accept the complaint's well-pleaded allegations as true and review the allegations in light most favorable to the plaintiff. *Id.* The plaintiff bears the burden of establishing jurisdiction. *Potter v. Cozen & O'Connor*, 46 F.4th 148, 155 (3d Cir. 2022).

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Rather, the complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. In evaluating a Rule 12(b)(6) motion, a district court must separate the legal and factual elements of the plaintiff's claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must assume the truth of all well-pleaded factual allegations, construes the facts and the reasonable inferences therefrom "in a light most favorable to the [plaintiff,]" and "determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Labs., LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

**DISCUSSION**

The Defendants collectively argue the Court should dismiss the complaint based on a lack of jurisdiction under the *Rooker–Feldman* doctrine, the expiration of the statute of limitations, and Ford's failure to state a claim.[3] The B&R Defendants separately move to set aside the default entered against them because their delay in response was due to excusable neglect, Ford will not be prejudiced by setting aside the default, and they possess meritorious defenses. U.S. Bank also moved to enjoin Ford from filing future cases regarding the underlying foreclosure. The Court will grant the motions to dismiss and the motion to set aside the default but not the motion to enjoin. The Court will first address whether to apply the *Rooker–Feldman* doctrine, then the merits of the motions to dismiss, the motion to set aside default, and finally the motion to enjoin Ford.

The Defendants collectively argue this Court lacks jurisdiction to hear this case because of the *Rooker–Feldman* doctrine. "Under the *Rooker–Feldman* doctrine, a losing state-court party is

---

[3] Each motion to dismiss asserts slightly different arguments and grounds for dismissal. For readability and efficiency, the Court will only address the arguments it has based its decision on and will not delineate which defendants made which arguments in their motions to dismiss.

'barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on [a] claim that the state judgment itself violates the loser's federal rights.'" *Gray v. Martinez*, 465 F. App'x 86, 88 (3d Cir. 2012) (alteration in original) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)). "[T]here are four requirements that must be met for the *Rooker–Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (cleaned up). The Court "constru[es] the *Rooker–Feldman* doctrine narrowly." *Parkview Assocs. P'ship v. City of Lebanon*, 225 F.3d 321, 326 (3d Cir. 2000).

This case easily meets the first, third, and fourth requirements of the *Rooker–Feldman* doctrine. Ford, a federal plaintiff, lost in state court when the Court of Common Pleas granted summary judgment against him and foreclosed his property. This adverse judgment against Ford was rendered on August 15, 2023, before the current action which was filed on December 18, 2025. And Ford requests this Court effectively overturn the state court's decision. *See* Compl. ¶ VI(A) ("Declare that the Service of Process in the underlying State Action was fraudulent and void *ab initio*."); *id.* ¶ VI(B) ("Issue a Permanent Injunction preventing Defendants from selling, transferring, or evicting Plaintiff from the property based on the void judgment.").

The much closer question is whether Ford complains of injuries caused by the state-court judgment. On first view of his allegations, he appears to be complaining of injuries caused by the state court ruling against him in the foreclosure proceedings. *See id.* ¶ I(3) ("This action seeks to void the fraudulent seizure and demands damages for the violation of Constitutional Rights."). But viewing his allegations liberally, as the Court must for pro se litigants, he asserts the Defendants'

alleged fabrication of affidavits of service is what injured him. This conduct was performed by non-court actors before the state court's final judgment. The harm does not come from the judgment itself. "[W]hen the source of the injury is the defendant's actions (and not the state court judgments), the federal suit is independent, even if it asks the federal court to deny a legal conclusion reached by the state court." *Great W. Mining*, 615 F.3d at 167. "'[B]ecause [Ford's] claim for damages is based on an alleged independent violation of [his] constitutional rights,' the source of [his] purported injury was the actions of Defendants . . . , not the state-court decisions themselves." *Id.* at 172. Indeed, the Third Circuit found a claim alleging a "conspiracy among [various actors] . . . to engineer [a party]'s defeat in state court" is not barred under the *Rooker–Feldman* doctrine. *Id.* at 171 (quoting *Brokaw v. Weaver*, 305 F.3d 660, 667 (7th Cir. 2002)). The *Rooker–Feldman* doctrine therefore does not apply and this Court has jurisdiction in this case.

The Defendants also argue the statute of limitations bars all of Ford's claims. The Court agrees that Ford's abuse of process and due process § 1983 claims are barred by the statute of limitations but finds his fraud on the court claim is timely filed. "The length of the statute of limitations for a § 1983 claim is governed by the personal injury tort law of the state where the cause of action arose." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). Ford's claims arose from the underlying foreclosure proceedings in Pennsylvania. Accordingly, both of Ford's § 1983 claims have a two-year statute of limitations "because Pennsylvania's statute of limitations for personal injury is two years."[4] *Sameric Corp. of Del. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). "A section 1983 cause of action accrues when the plaintiff knew or should have known of

---

[4] The Court presumes Ford is bringing a federal abuse of process claim under § 1983. *See* Compl. ¶ I(1) ("This is a civil rights action brought under 42 U.S.C. 1983 and for Fraud on the Court."). Even if he was bringing a state abuse of process claim, his statute of limitations would still be the same. *P.J.A. v. H.C.N.*, 156 A.3d 284, 289 (Pa. Super. Ct. 2017) ("The statute of limitations applicable to a claim for Abuse of Process is two years.").

the injury upon which its action is based." *Id.* Ford's injury is based on the alleged fraudulent service. That alleged service apparently occurred on March 28, 2023 and March 30, 2023 with the affidavits of service being filed on the docket in the underlying foreclosure action on April 13, 2023 and May 31, 2023. This action filed on December 18, 2025 is beyond the two-year statute of limitations, no matter which accrual date is picked.

Ford argues the statute of limitations has not expired yet because, under the discovery rule and the continuing violations doctrine, it is tolled to when he actually reviewed the affidavits of service and noticed the alleged discrepancies. Neither basis for tolling applies here. "The general rule is that state tolling principles also govern § 1983 claims." *Kach*, 589 F.3d at 639. In Pennsylvania, the discovery rule tolls the statute of limitations until "the plaintiff has discovered his injury, or, in the exercise of reasonable diligence, should have discovered his injury." *Corbett v. Weisband*, 551 A.2d 1059, 1068 (Pa. Super. Ct. 1988) (citation omitted). "To demonstrate reasonable diligence, a plaintiff is required to establish that he exhibited 'those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests . . . .'" *Wilson v. El-Daief*, 964 A.2d 354, 363 n.6 (Pa. 2009) (quoting *Cochran v. GAF Corp.*, 666 A.2d 245, 249 (Pa. 1995)).

Ford reasonably could have discovered the alleged fraudulent service with due diligence over two years before he initiated this action. The affidavits of service that Ford believes demonstrate fraud were filed on the public docket in his state case on April 13, 2023 and May 31, 2023. Based on his participation in the litigation and use of the electronic filing system, he had access to these docket entries.[5] So, with due diligence, he could have easily reviewed the affidavits

[5] *See, e.g.*, Dkt. No. 22-10 at 4 ("Ford, Robert Henry, hereby certify that the foregoing answer or otherwise plead [sic] has been filed electronically on this 28th day of April 2023 and is available for viewing on the Court's ECF System.").

and discovered they were fraudulent. Indeed, if service was never performed as Ford alleges, the filings of the affidavits of service should have put him on notice that something was amiss.[6]

Ford also points to the continuing violation doctrine as another basis to toll his deadline. He argues his complaint is timely because "the Defendants' illegal conduct continued to harm Plaintiff through the sale of the property in July 2024." Dkt. No. 8 at 1. This argument also fails. "The continuing violations doctrine is an equitable exception to the timely filing requirement" that applies "when a defendant's conduct is part of a continuing practice." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (internal citations and quotation marks omitted). Under this doctrine, an "action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Id.* "[T]he focus of the continuing violations doctrine is on affirmative acts of the defendants" and "not continual ill effects from the original violation." *Weis–Buy Serv., Inc. v. Paglia*, 411 F.3d 415, 423 (3d Cir. 2005) (quoting *Cowell*, 263 F.3d at 293). Ford is alleging the effects of the fraudulent service continued through the foreclosure proceeding, but the last unlawful act that the Defendants allegedly performed was filing the affidavits on May 31, 2023.

Even considering the tolling exceptions, the two-year statute of limitations for Ford's § 1983 claims began running at the latest on May 31, 2023 and ended on May 31, 2025. Because Ford filed his § 1983 claims on December 18, 2025, over seven months after the statute of limitations elapsed, those claims are time barred. As a result, the Court will dismiss those claims.

Ford's Fraud Upon the Court claim (Count II), however, is different. First, fraud upon the court is not a claim under § 1983.[7] *Forrest Hill Cmty. Ass'n v. Pub. Servs. Elec. & Gas Co.*, No.

---

[6] While it is beyond the scope of the Court's inquiry at the motion to dismiss stage, Ford has not provided an explanation of how he was made aware of the lawsuit if he was not validly served.

[7] The Court assumes Ford is bringing a federal fraud on the court action. If he is attempting to bring a state fraud claim, it would be time barred for the same reasons as his § 1983 claims.

19-16692, 2022 WL 3586392, at *14 (D.N.J. Aug. 21, 2022) ("The Court is not aware of any authority . . . suggesting that a fraud-on-the-court claim is a cognizable constitutional claim under 42 U.S.C. § 1983."). So, Pennsylvania statute of limitations rules do not apply. Second, there is no explicit statute of limitation for a fraud on the court claim. *See Root Refining Co. v. Universal Oil Products Co.*, 169 F.2d 514, 522 (3d Cir. 1948) ("[W]hen the controversy has been terminated by a judgment, its freedom from fraud may always be the subject of further judicial inquiry; and the general rule that courts do not set aside their judgments after the term at which they rendered has no application."); *Williams v. Vaughn*, No. 02-1077, 2005 WL 3348863, at *2 n.3 (E.D. Pa. Dec. 8, 2005) ("There is no statute of limitations for bringing a fraud upon the court claim."). Indeed, courts have reviewed fraud on the court claims based on actions that are decades old. *See, e.g.*, *Herring v. United States*, 424 F.3d 384, 386-89 (3d Cir. 2005) (considering a fraud on the court action brought in 2003 regarding events that occurred in the 1950s and was discovered in the early 2000s). Ford's fraud on the court claim is therefore not time barred.

Turning to the merits of the remaining count, the Court finds Ford has failed to state a plausible claim because a federal fraud on the court claim is not cognizable for fraud on a state court, this type of claim cannot be used to acquire monetary damages, and the state court was not plausibly deceived. A fraud on the court claim originates from courts' "historic power of equity to set aside fraudulently begotten judgments." *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245 (1944). This power is preserved in federal court by Federal Rule of Civil Procedure 60(d) which states "[t]his rule does not limit a court's power to . . . set aside a judgment for fraud on the court." "[A] determination of fraud on the court may be justified only by 'the most egregious misconduct directed to the court itself,' and that it 'must be supported by clear, unequivocal and convincing evidence.'" *Herring*, 424 F.3d at 386-87 (quoting *In re Coordinated*

*Pretrial Procs. in Antibiotic Antitrust Actions*, 538 F.2d 180, 195 (8th Cir. 1976)). Fraud on the court claims are incredibly rare. *Id.* at 386 ("Actions for fraud upon the court are so rare that this Court has not previously had the occasion to articulate a legal definition of the concept.").

As a threshold matter, it is not clear a fraud on the court action in federal court can challenge the validity of a state court judgment. A fraud on the court action is justified by "the inherent power [that] allows a federal court to vacate its *own judgment* upon proof . . . a fraud has been perpetrated upon the court." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (emphasis added). It stands to reason that a federal court does not have such inherent power to vacate a state court's judgment. *Cf. Williams*, 2005 WL 3348863, at *2 (finding federal district courts lack the ability to consider an independent fraud on the court action when the fraud was allegedly perpetrated on a state court in a criminal matter). Indeed, a principle of fraud on the court is that these claims should be brought to the court which suffered the alleged fraud. *Taft v. Donellan Jerome, Inc.*, 407 F.2d 807, 809 (7th Cir. 1969) ("Such [fraud on the court] motion[s] must be brought in the court which rendered the original judgment."); *Weisman v. Charles E. Smith Mgmt., Inc.*, 829 F.2d 511, 513 (4th Cir. 1987) ("[T]he proper forum in which to assert that a party has perpetrated a 'fraud on the court' is the court which allegedly was a victim of that fraud."). So a fraud on the court claim, if available, belongs in the underlying state court because it was the court that suffered the alleged fraud.

Further, a fraud on the court action cannot be used to seek monetary damages. "[T]his Court has [found] no case in the Third Circuit which has accepted fraud on the court as an independent cause of action for monetary damages." *Hatchigian v. Sklar L., LLC*, No. 22-2866, 2022 WL 16857006, at *5 (E.D. Pa. Nov. 10, 2022), *aff'd sub nom.*, *Hatchigian v. Morris*, No. 22-3302, 2023 WL 6307747 (3d Cir. Sep. 28, 2023). In fact, courts regularly find damages are not

available in fraud on the court actions. *See, e.g.*, *In re Farmland Indus., Inc.*, 639 F.3d 402, 405 (8th Cir. 2011) ("[T]he remedy [appellant] seeks—money damages—is at odds with a fraud on the court claim, for which the remedy is the setting aside of the fraudulently obtained court judgment."); *Okorie v. Foxworth*, No. 25-60431, 2026 WL 614859, at *4 (5th Cir. Mar. 4, 2026) (per curiam) ("[Plaintiff] failed to assert a valid claim for fraud on the court because it is not a cause of action for damages but 'a basis to set aside a judgment . . . .'"). This limitation conforms with fraud on the court's history as an equitable measure instead of a legal remedy. *Coultas v. Payne*, No. 11-CV-00045, 2016 WL 740421, at *4 (D. Or. Feb. 24, 2016) ("Due to those equitable origins, no court has found that fraud on the court is an independent legal cause of action for which a plaintiff may recover damages."). Instead, fraud on the court actions are generally used to reopen fraudulent judgments. *Interstate Fire & Cas. Co. v. 1218 Wis., Inc.*, 136 F.3d 830, 836 (D.C. Cir. 1998) ("Because [fraud on the court] does not sound in tort, the only remedy available . . . is vacatur of the [] judgment."). Ford's fraud on the court claim fails because it is seeking monetary damages. *See* Compl. ¶ VI(C) ("Award Plaintiff actual damages in the amount of $500,000.00 . . . . Award Plaintiff punitive damages in the amount of $1,500,000.00 . . . .").

But even assuming a federal fraud on the court claim seeking monetary damages is cognizable when the fraud is done on a state court, Ford still fails to state a plausible claim. To prove fraud on the court, Ford must show: "(1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) in fact deceives the court." *Herring*, 424 F.3d at 386. He fails to plausibly allege the state court was in fact deceived by the fraud. To prove the fraud deceived the court, Ford must show it "successfully deceived the court," not just that it could have. *In re Bressman*, 874 F.3d 142, 150 (3d Cir. 2017). Courts have found this element requires proof that the court relied on the fraud in rendering its decision. *MacArthur v. San Juan Cnty.*,

495 F.3d 1157, 1161 (10th Cir. 2007) ("A litigant seeking to establish fraud on the court must prove that the district court relied on fraudulent statements in rendering its decision." (citing *Herring*, 424 F.3d at 390)); *800 Servs., Inc. v. AT&T Corp.*, 822 F. App'x 98, 99 (3d Cir. 2020) (finding a fraud on the court claim fails because "there is no evidence that the . . . [c]ourt relied on . . . the[] alleged misrepresentations" and it "dismissed the . . . claims as barred by the statute of limitations" without "even mention[ing the allegedly fraudulent] testimony").

Ford has not plausibly alleged the underlying state court adversely relied on the affidavits of service in rendering its decision. Generally, courts acquire personal jurisdiction over a defendant by service of process that satisfies the Pennsylvania Rules of Civil Procedure. *Sharpe v. McQui*ller, 206 A.3d 1179, 1184 (Pa. Super. Ct. 2019). But "effective service of process is not the only means by which a court acquires [personal] jurisdiction" because "[s]uch jurisdiction also may be obtained through waiver or consent." *Id.* "[A] defendant manifests the intent to submit to the court's jurisdiction when the defendant takes 'some action (beyond merely entering a written appearance) going to the merits of the case, which evidences an intent to forego objection to the defective service.'" *Id.* at 1184 (quoting *Cathcart v. Keene Indus. Insulation*, 471 A.2d 493, 499 (Pa. Super. Ct. 1984)). So if a defendant takes some action on the merits of his case, the court gains personal jurisdiction over him even if there was defective service.

Ford falls into this exception to personal jurisdiction. Assuming, as the Court must at the motion to dismiss stage, that the service was fraudulent (i.e., defective), Ford waived any challenge to the service once he began to litigate the case. He filed an answer to the foreclosure complaint, responded to discovery requests, opposed a motion for summary judgment, moved for reconsideration, and filed an appeal. These actions go beyond entering a written appearance and go directly to the merits of his case. So even if the service was fraudulent as Ford alleged, the state

court still had valid personal jurisdiction over him and he could not challenge it based on failure of service. The state court did not rely on the affidavits of service when rendering its decision, whether they were fraudulent or not.[8] So it was not successfully deceived by the alleged fraud.

Ford's argument stating the fraudulent service deceived the state court into believing it has jurisdiction over him even though he was a business entity does not change this outcome. *See* Compl. ¶ V ("Defendants knowingly submitted or relied upon false affidavits to deceive the State Court into believing it had jurisdiction over the Plaintiff."). First, as just mentioned, he waived any right to challenge the service and the state court's personal jurisdiction over him whether he is a business entity or not. Second, his argument was already fully presented to the state court.[9] Third, even if the court were to consider the argument on its merits, it would fail as meritless. Ford's involvement in that case and in the subsequent lawsuits was as an individual person not a corporate entity who is subject to the jurisdiction and authority of state and federal courts.[10] His "'sovereign citizen' or 'straw man' arguments have been widely rejected as frivolous by federal

---

8 This outcome is strengthened by the fact that no court orders in the underlying state litigation cite or even mention the affidavits of service.

9 *See, e.g.*, Dkt. No. 23-7 at 2 ("Robert Henry Ford III is the registered business entity in good standing with the state, owns property and is the sole proprietor of that business and the property in question."); Dkt. No. 22-14 at 2-3 ("[B]usiness entity ROBERT HENRY FORD III that owns and holds all private property held in that registered name proves that Ford, Robert Henry cannot be the non-living unregistered legal entity, citizen, or person Robert H. Ford A/K/A Robert H Ford III as stated by the plaintiff. . . . The proper filing of the ANC proves you are not that legal name/entity and that your registered entity has standard in any court to keep judges from thinking they have right and total discretion to rule as he or she desires . . . .").

10 Indeed, if Ford was truly acting as a business entity, he would be unable to bring this instant case or appear in any case because a business entity can only be represented through licensed attorneys. *Ford*, 2025 WL 2845361, at *2 ("Mr. Ford is not a barred attorney. Therefore, if the complaint asserted actionable claims on behalf of a business entity, it would be dismissed with leave to amend through counsel."); *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel.").

and state courts." *Blinke v. Sweeney*, No. 23-CV-01259, 2023 WL 8361795, at *2 (M.D. Pa. Nov. 9, 2023) (collecting cases), *report and recommendation adopted*, No. 23-CV-01259, 2023 WL 8359908 (M.D. Pa. Dec. 1, 2023). Ford has failed to plausibly allege a fraud on the court claim. The Court accordingly dismisses this entire action with prejudice.[11] The Court will not grant leave to amend because such amendment would be futile.

As a result of this dismissal, the Court will also set aside the default against the B&R Defendants. Courts have a strong presumption in favor of resolving cases on the merits instead of defaults. *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984) ("[T]his court does not favor entry of defaults . . . ."). "[I]n a close case doubts should be resolved in favor of setting aside the default and reaching a decision on the merits." *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 122 (3d Cir. 1983). Courts will set aside a default after considering (1) "whether the plaintiff will be prejudiced;" (2) "whether the defendant has a meritorious defense;" and (3) "whether culpable conduct of the defendant led to the default." *Id.* The Court has already found the B&R Defendants have a meritorious defense and dismissed the claims against them. Their victory on the merits outweighs any culpability they had in their default and any prejudice Ford may have suffered. Accordingly, the Court will set aside the default.

Finally, the Court will deny U.S. Bank's motion to deem Ford a vexatious litigant, enjoin him from future filings related to this case, and impose sanctions on him. This Court has the authority "to issue an order restricting the filing of meritless cases by a litigant whose manifold complaints raise claims identical or similar to those that already have been adjudicated" under the

---

[11] The B&R Defendants have not filed a motion to dismiss but instead moved to set aside their default. The Court however finds it appropriate to dismiss all claims against all defendants for the reasons explained above. A "court may sua sponte dismiss a complaint under Rule 12(b)(6), but only after service of process." *Auriemma v. Bloomfield Mun. Ct.*, 841 F. App'x 499, 500 (3d Cir. 2021) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 n.15 (3d Cir. 2002)).

All Writs Act. *In re Oliver*, 682 F.2d 443, 445 (3d Cir. 1982). The Third Circuit has found "that a continuous pattern of groundless and vexatious litigation can, at some point, support an order against further filings of complaints without the permission of the court." *Id.* at 446. This type of action "is an extreme remedy which must 'be narrowly tailored and sparingly used.'" *Abdul-Akbar v. Watson*, 901 F.2d 329, 332 (3d Cir. 1990) (quoting *Matter of Packer Ave. Assocs.*, 884 F.2d 745, 747 (3d Cir. 1989)). It is only "[w]hen a district court is confronted with a pattern of conduct from which it can only conclude . . . a litigant is intentionally abusing the judicial process and will continue to do so unless restrained," that "it is entitled to resort to its power of injunction and contempt to protect its process." *Id.* at 333. "Litigiousness alone will not support an injunction restricting the plaintiff's filing activities." *Id.* at 332.

U.S. Bank has not shown Ford has engaged in a pattern of abuse yet in this Court. He unsuccessfully litigated his foreclosure action in state court. Then in federal court, he filed one previous complaint regarding the foreclosure. This instant case is his second federal lawsuit. A state court proceeding and two federal lawsuits are not sufficient to deem Ford a vexatious litigant. *See, e.g.*, *Oliver*, 682 F.2d at 444 (affirming the injunction of a litigant who filed over 50 meritless cases). Further, while Ford has asserted sovereign citizen arguments against the authority of courts in the past, he has not shown a disregard for this Court's authority yet.

"Access to the courts is a fundamental tenet of our judicial system . . . ." *Id.* at 446. While U.S. Bank may understandably want to permanently put this foreclosure issue to rest, that desire does not outweigh Ford's access to the courts. Under this record, the Court will not shut its doors to Ford at this time. U.S. Bank's motion is denied. This Court will however seriously consider granting a future motion if Ford continues to file groundless and vexatious lawsuits regarding the underlying foreclosure.

**CONCLUSION**

"The loss of a house is a devastating life event, and Mr. Ford understandably seeks to preserve ownership." *Ford*, 2025 WL 2845361, at *5. But because Ford has filed his § 1983 claims past the statute of limitations and failed to state a plausible fraud on the court claim, the Court will dismiss his complaint with prejudice. The Court, however, will not deem Ford a vexatious litigant, enjoin him from future filings, or impose sanctions on him at this time.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.